UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 1:17-cv-23289-UU

DEBORAH BRANCO, STEPHANIE )
HACKER, VIVIAN HERNANDEZ, and )
other similarly situated individuals, )
)
       Plaintiff(s), )
)
v. )
)
SOUTHERN OPERATIONS LLC d/b/a )
Yardbird Southern Table & Bar and JOHN )
KUNKEL, individually )

       Defendants.

## RESPONSE IN OPPOSITION TO
## DEFENDANTS' SECOND MOTION TO COMPEL ARBITRATION

Plaintiffs, STEPHANIE HACKER, and VIVIAN HERNANDEZ, provide this response in opposition to Defendant's Second Motion to Compel Arbitration filed on March 23, 2018 (DE 49).

I. LIST OF EXHIBITS

   A. Declaration of Plaintiff Deborah Branco

   B. Declaration of Plaintiff Stephanie Hacker

   C. Declaration of Plaintiff Vivian Hernandez

   D. Declaration of former employee Paula Barreto

   E. Opt-out form signed by Plaintiff Deborah Branco

   F. Final written notice to Plaintiff Deborah Branco

II.   FACTS

Defendants intended to implement an arbitration requirement to their employees by issuing a so called "not mandatory" agreement in late March and early April 2017.[1]  This arbitration agreement also contains other provisions including a waiver of jury trial and a waiver of class and collective action.[2]  The agreement contains conflicting provisions that both require the recipient to sign the agreement to agree to it, while also stating that it is considered accepted unless an individual opts-out in writing.[3]  To opt out, an employee must send an email to the address hr@50eggsinc.com requesting an opt-out form that must then be returned.[4]  Unfortunately, that email address was either unmonitored or ignored as it never responded to any requests for opt-out forms.[5]

The agreement further states that acceptance is not a mandatory condition of employment while the opt out form states that the person opting out will not be retaliated against for doing so.[6]  Despite these written assurances, Defendants, through their managers, assured the employees that they would not be given shifts to work unless they signed their agreements.[7]  Plaintiffs Hacker and Rodriguez signed the agreement reluctantly, fearing their jobs.[8]

The threat of retaliation and fear was very real considering the third Plaintiff in this action, Deborah Branco, was subject to retaliation.  She was used as an example to the others of the consequences of disobeying their arbitration directive.  Just four days after Ms. Branco's first

---

[1] Defendants' Exhibits A and B
[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] Plaintiffs' Exhibit A, paragraph 6; Plaintiffs' Exhibit D, paragraph 5
[6] Exhibit E
[7] Exhibit A, paragraph 7; Exhibit B, paragraph 3; Exhibit C, paragraph 3; Exhibit D, paragraph 4
[8] Exhibit B, paragraph 7; Exhibit C, paragraph 6

request for the arbitration opt-out form, she was given a Final Written Notice for insubordination.[9] This notice also included a previously undocumented tardiness accusation from March 5, 2017. Fellow employee Paula Barreto was subject to an identical set of circumstances to Ms. Branco.[10] Ms. Barreto requested opt out forms directly on her agreement, tried unsuccessfully to get an opt-out form from the email address hr@50eggsinc.com, and was written up shortly after.[11]

Plaintiffs Hacker and Hernandez saw that if they followed the lead of Ms. Branco and opted out of the agreement, they would also likely be written up and could lose their jobs.[12] Ms. Branco and Ms. Barreto were terminated thereafter.

III. MEMORANDUM OF LAW

The validity of an arbitration agreement is controlled by Florida law.[13] Though arbitration agreements cannot be limited specifically, its validity is to be considered through state contract law.[14] This means that standard contract defenses like fraud, coercion, duress, and/or unconscionability may invalidate an arbitration agreement without running awry of Section 2 of the Federal Arbitration Act.[15]

The contractual relationship in question should not be limited to simply whether/why/how the agreement was signed. Case law suggests that the arbitration agreement originally given to all employees may have been binding even without signature.[16] Therefore,

---

[9] Exhibit F
[10] See Exhibit D
[11] Id.
[12] Exhibit B, paragraph 7; Exhibit C, paragraph 6
[13] *Shotts v. OP Winter Haven, Inc.*, 86 So.3d 456, 459 (Fla. 2011).
[14] 9 U.S.C. §2.
[15] *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687 (1996)
[16] *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1370, 1369 (11th Cir. 2005)

the court must consider the requirement to opt out of the agreement as part of the contractual analysis. Due to the way the contract was written, the analysis should be extended to include the methods in which employees were prevented from opting out of the agreement in addition to the construction of the agreement itself.

### A. Coercion and Duress Caused by Defendants Invalidates the Arbitration Agreement

Plaintiffs were the victims of coercion and duress in that they were made to sign a "not mandatory" contract through intimidation and retaliation. "Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition."[17] To effectively show duress, "it must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side."[18]

All three Plaintiffs have stated that their shifts were threatened almost immediately after management perceived any type of delay in signing the arbitration agreement. After signing the agreement (which seems to have been mandatory despite the language of the agreement) any thoughts to opt out of the agreement were prevented by Defendants. Those who spoke up about opting out of the agreement were quickly written up under dubious circumstances and had their schedules altered for the worse. These retaliatory displays were done in front of other employees for them to see what happens if you opt out of the agreement.

### B. The Arbitration Agreement is Unconscionable Due to Defendants' Practice of Lies and Intimidation

---

[17] *City of Miami v. Kory,* 394 So. 2d 494, 497 (Fla. 3d DCA 1981)
[18] *Peralta v. Peralta Food, Corp.*, 506 F. Supp. 2d 1274, 1280 (S.D. Fla. 2007)(citing *City of Miami v. Kory,* 394 So. 2d 494, 497 (Fla. 3d DCA 1981))

The arbitration agreement is both procedurally and substantively unconscionable rendering it invalid as to Plaintiffs Hacker and Hernandez. In order for the Court to consider invalidating the arbitration agreement due to unconscionability, it must be shown that the agreement is both procedurally and substantively unconscionable.[19]  "Procedural unconscionability relates to the manner in which the contract as entered into and involves such issues as 'the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. Substantive unconscionability focuses on the actual agreement and whether the terms are unreasonable and unfair."[20]

1. <u>The arbitration agreement is procedurally unconscionable</u>

In Florida, procedural unconscionability is determined by analyzing four points surrounding the execution of a contract:

> "(1) the manner in which the contract was entered into;
> (2) the relative bargaining powers of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into;
> (3) whether the terms were merely presented on a 'take-it-or-leave-it' basis, and
> (4) the complaining party's ability and opportunity to understand the disputed terms of the contract."[21]

Plaintiffs Hacker and Hernandez satisfy all 4 requirements.

The arbitration agreement was given out while on shift, without being explained, and employees were encouraged to sign it quickly.[22] Though the contract states that it was not mandatory, employees did not have a meaningful choice in entering into it. They were all threatened with the loss of shifts if the agreement was not signed. Those that requested to opt

---

[19] *Chalkiadakis v. Keiser Sch., Inc.*, No. 12-60286-CIV-DIMITROULEAS/S, 2012 U.S. Dist. LEXIS 196152, at *33 (S.D. Fla. Aug. 31, 2012)
[20] *Id*. (Internal citations omitted)
[21] *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010)
[22] Exhibit A, paragraph 7; Exhibit B, paragraph 3; Exhibit C, paragraph 3; Exhibit D, paragraph 3

out of the agreement were immediately retaliated against and made an example of to all other employees.[23]

    2.    <u>The arbitration agreement is substantively unconscionable</u>

The terms of the agreement itself were unfair as they were not attainable. The ability to opt out of the contract was specifically stated in the agreement and acceptance was listed as "not...mandatory." However, these terms were impossible to comply with even if you accepted the threats and retaliation that came with your request. The email address given to the employees to request to opt out of the agreement went unmonitored and/or ignored[24] suggesting there was no intention of letting employees opt-out. Requests to management went unanswered.[25] Ms. Branco was the only one of the four people interviewed who was able to actually obtain an opt-out form, and this was only after several failed attempts at doing so.[26] Even after officially opting out, the Defendants still denied she had ever signed the original agreement, requested the opt-out form, and signed the opt-out form.[27] Defendants later attempted to retract this position with an unsupported paragraph in their Reply[28] blaming a human resources personnel change for the false position. However, the unsupported explanation still failed to explain why the necessary email account when unmonitored and why firm false statements were made about Ms. Branco's history with rejecting the arbitration agreement.

---

[23] Exhibit A, paragraph 9; Exhibit B, paragraphs 4-7; Exhibit C, paragraphs 5-6; Exhibit D, paragraph 6
[24] Exhibit A, paragraph 6; Plaintiffs' Exhibit D, paragraph 5
[25] Exhibit C, paragraph 4; Exhibit D, paragraph 5
[26] Exhibit A, paragraph 6
[27] Docket Entry 20 - Defendants' Motion to Compel Arbitration, page 3
[28] Docket Entry 30, page 5

Simply, Defendants had no intention of ever letting anyone opt out of the agreement. As it seems, Defendants' plan to implement their "non-mandatory" arbitration agreement was to: (1) not explain the agreement; (2) intimidate employees into signing the agreement; (3) deny access to the form to opt out of the agreement; (4) retaliate against those who want to opt out; (5) fire those that did opt out; and (6) if signed opt-out paperwork does exist, deny it. At all levels, Defendants have made an unconscionable agreement.

IV.   CONCLUSION

Though a difficult burden rests with the Plaintiffs to have an arbitration agreement declared invalid, Defendants blatant and repeated showings of intimidation and deceit have made that burden more than achievable. The contract forced upon Plaintiffs was coerced and unconscionable. The denial of the existence of an opt-out form executed by Plaintiff Branco speaks for itself as to the business nature of Defendants.

WHEREFORE, Plaintiffs request Defendants' Motion to Compel Arbitration be denied in its entirety.

Dated: April 6, 2018.

Respectfully submitted,

By:   /s/ R. Edward Rosenberg
R. Edward Rosenberg, Esquire
Fla. Bar No.: 88231
Email: rer@sorondorosenberg.com
Sorondo Rosenberg Legal PA
1825 Ponce de Leon Blvd. #329
Coral Gables, FL 33134
T: 786.708.7550
F: 786.204.0844

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send copies to all parties of record.

/s/ R. Edward Rosenberg
R. Edward Rosenberg, Esq.
